IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA MERCER, | ) |
| Plaintiff, | ) No. 13 C 6280 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| THOMAS J. DART, Sheriff of Cook County, Illinois; COOK COUNTY, ILLINOIS, a body politic, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Pamela Mercer filed this action against Cook County and the Cook County Sheriff alleging that she suffered employment discrimination and harassment based on her race and sex, as well as retaliation while employed by the Cook County Sheriff's Office in violation of Title VII of the Civil Rights Act of 1964. The County and Sheriff now move for summary judgment. For the following reasons, the Court grants the Defendants' Motion for Summary Judgment.[1]

**I. BACKGROUND**

Mercer is an African American woman and has worked for the Cook County Sheriff's Office since April, 1988. (Def. 56.1, ¶ 1).[2] She initially worked as a Correctional Officer, but

---

[1] The Court notes that Mercer—the party that brought this suit—failed to respond to this motion. Mercer is represented by counsel and was informed of the deadline for her response on September 29, 2014. Mercer was ordered to respond by October 31, 2014. Plaintiff's counsel was aware of this deadline because Defendant's motion for extension of time to file the motion was unopposed and Defendants noted in their motion that Plaintiff's counsel had been contacted and did not object. When she failed to respond, Defendants contacted Plaintiff's counsel on November 6, 2014 to see if Plaintiff's counsel would be filing a response and Plaintiff's Counsel informed Defendants that he intended to seek leave of the Court to do so. He never did. Defendants then timely filed their reply brief on November 10, 2014. It has now been over six months since the deadline and Mercer has failed to respond or otherwise seek leave of Court to respond. As an electronic filer, Plaintiff's counsel also received the Reply brief and failed to seek leave of Court to file anything. The Court, therefore, now rules without the benefit of her response.

[2] Pursuant to Local Rule of Civil Procedure 56.1, "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Because

was promoted to the rank of Correctional Sergeant in November of 1993. (*Id*. at ¶¶ 4, 5). Mercer continues to be employed by the Sheriff's Office as a Correctional Sergeant to this day. (*Id*. at ¶ 5). Since 2011, she has worked the 11:00 p.m. to 7:00 a.m. shift with two other black female Sergeants, Gerdeane James and Carol Palmer; and her immediate supervisors have been one black male and one white male, Lieutenants Jerry Camel and Gus Paleologos, respectively. (*Id*. at ¶¶ 10, 11). The supervisor above Camel and Paleologos is a white male, Commander Edward Byrne. (*Id*. at ¶ 12).

In 2009, Mercer filed a lawsuit against the Sheriff, the County, and several individuals for sex discrimination, hostile work environment, and violation of equal protection. *See Mercer v. Cook Cnty., Ill. et al*, WL 1044549 (N.D. Ill. 2012) (granting defendant's motion for summary judgment on all counts); *Mercer v. Cook Cnty., Ill.*, 527 F. App'x 515 (7th Cir. 2013) (affirming district court). In 2012, Mercer filed a second lawsuit against the Sheriff and County for race and sex discrimination, as well as retaliation for filing her 2009 suit. *See Mercer v. Dart, et al.*, WL 2862272 (N.D. Ill. 2014) (granting defendants' motion for summary judgment on all counts). While her 2012 lawsuit was pending before Judge Der-Yeghiayan, Mercer brought this suit, similarly alleging race and sex discrimination, as well as retaliation for the filing of her other lawsuits.

In her Amended Complaint before this Court, Mercer primarily complains of a November 27, 2011 incident involving Sergeant Carol Palmer; a directive regarding the proper return of work equipment; an incident with Officer Iacovetti; receipt of a five-day suspension for

---

Mercer has not filed a response to Defendants' Statement of Material Facts, all the facts in Defendants' statement that are adequately supported by the record will be accepted as true by this Court. L.R. 56.1; *see also Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (stating that "[t]he obligation set forth in Local Rule 56.1 is not a mere formality," and that "[i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial") (internal quotations omitted); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) ("[I]f the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her.").

disobeying a direct order; receipt of a ten-day suspension for failing to discipline an officer; receiving a written reprimand for failing to properly complete a Gang Form; and Lieutenant Paleologos slamming a door in her face, cutting in front of her to remove handcuffs from detainees, and snatching a form out of her hand. (*See* Dkt. No. 7).

### A. Sergeant Carol Palmer

On November 27, 2011, Palmer followed Mercer into a room and held the door closed so that Mercer could not leave. (Def. 56.1, Ex. E. at 95-97). Mercer used her radio to report a problem and then pushed past Palmer to get out of the office. (Def. 56.1, ¶ 27). Mercer does not know why Palmer came to speak with her, though she admitted Palmer never threatened her with harm, touched her, or made any mention of previous lawsuits or filings with the IDHR or EEOC. (Def. 56.1, ¶ 29; *Id*., Ex. E. at 98, 122).

### B. Radios and Keys

Mercer alleges she was the only supervisor subjected to specific key and radio rules, such as when and where to sign out such equipment. (Dkt. No. 7, ¶ 14). She alleges that Lieutenant Jerry Camel "consistently harassed [her] about keys and radios even when [she] was in full compliance with all procedures and general orders regarding her position." (Dkt. No. 7, ¶ 12; Def. 56.1, Ex. E. at 144). Mercer admitted, however, that Lieutenants Camel and Paleologos, under the approval of Director Trebilco and Commander Byrne, issued an order requiring all employees on Mercer's shift to return their equipment at a certain time. (Def. 56.1, ¶ 40). She further admitted that the order was directed at all supervisors and not just her. (*Id*. at ¶ 41). The same claims arising from the radio and key handling procedures now before this Court were addressed in Mercer's 2012 lawsuit and were resolved in favor of Defendants on summary judgment. (Def. 56.1, Ex. D. at 6-7, 13, 15; Ex. E. at 144).

### C. Officer Iacovetti

On April 28, 2011, Mercer and Officer Iacovetti bumped into each other, though they dispute who initiated the contact. (Def. 56.1, ¶ 43). Both officers submitted a complaint regarding this incident and Mercer was not disciplined as a result of it. (*Id*. at ¶¶ 45-46). This claim was addressed in Mercer's 2012 lawsuit and was resolved in favor of Defendants on summary judgment. (Def. 56.1, Ex. D. at 7-8).

### D. Suspensions

Mercer received a five-day suspension for an incident that took place on July 21, 2011 where she reprimanded a correctional officer for wearing a dirty t-shirt and allowing inmates to congregate in a cooling area despite direct orders from her commander that such conduct was acceptable due to extreme heat. (Def. 56.1, ¶¶ 48, 49, 51, 55). This claim was addressed in Mercer's 2012 lawsuit and was resolved in favor of Defendants on summary judgment. (Def. 56.1, Ex. D. at 8). At the end of March 2013, Mercer received a ten-day suspension for failing to discipline an officer who committed a rules infraction under her supervision. (Def. 56.1, ¶¶ 67-68). Neither suspension has been served. (*Id*. at ¶¶ 55, 68).

### E. Gang Form

All employees of the Cook County Sheriff's Office must complete a "Known Criminal Organization/Gang Membership Disclosure" form. (Def. 56.1, ¶ 58). Mercer submitted an incomplete Gang Form on February 25, 2013. (*Id*. at ¶ 59). About two weeks later, Lieutenant Paleologos was directed to counsel Mercer regarding the proper completion of the form and he did so. (*Id*. at ¶ 61-62).

### F. Lieutenant Gus Paleologos

Mercer claims Lieutenant Paleologos "slammed a door in [her] face, snatched a three part form from [her] hand, stepped between [her] and inmates while she was un-cuffing and initiated two separate charges of retaliatory discipline against [Mercer] in a 30-45 day period." (Dkt. No. 7, ¶ 30). Defendants refute these characterizations of Paleologos' actions, claiming he never slammed a door in Mercer's face; never intentionally snatched a form from her hands; and would merely assist officers in un-cuffing inmates to expedite the process. (Def. 56.1, ¶¶ 71-78). Defendants do not dispute that Paleologos filed two charges against Mercer in a 30-45 day period.

## II. STANDARD OF REVIEW

Summary judgment on the merits is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Hoffman v. Caterpillar Inc.*, 256 F.3d 568, 571 (7th Cir. 2001). In determining whether there is a genuine issue of material fact, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. DISCUSSION

### A. Res Judicata

Preliminarily, the Court notes that Mercer's claims are barred by res judicata to the extent they were resolved in her 2012 case, *Mercer v. Dart, et al.*, WL 2862272 (N.D. Ill. 2014). Res judicata precludes claims where there is: "(1) an identity of the parties in the first and second lawsuits; (2) an identity of the cause of action; and (3) final judgment on the merits in the first

suit." *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). Res judicata does not, however, "bar a suit based on claims that accrue after a previous suit was filed. It does not matter whether, as in the case of harassment, the unlawful conduct is a practice, repetitive by nature, that happens to continue after the first suit is filed, or whether it is an act, causing discrete, calculable harm, that happens to be repeated." *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) (internal citations omitted). In this case, Mercer's claims arising from the directive regarding the proper return of work equipment; the incident with Officer Iacovetti; and the receipt of her five-day suspension for disobeying a direct order are barred because all were evaluated and resolved on the merits in a case involving the same parties that are currently before this Court. *See Mercer*, 2012 WL 2862272.

### B. Exhaustion of Administrative Remedies

In addition to her claims that are barred by res judicata, all but one of Mercer's remaining claims are barred because she failed to properly exhaust her administrative remedies. In support of this suit, Mercer filed with the Court her 2012 Illinois Department of Human Rights charge and corresponding EEOC right to sue letter, claiming that she was harassed by Sergeant Carol Palmer on November 27, 2011 in retaliation for the discrimination charge she filed against the defendants. (*See* Dkt. No. 7, 15-17). Generally, a Title VII plaintiff cannot bring a claim in a lawsuit that was not included in her underlying EEOC charge. *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497 (7th Cir. 1994). To bring a Title VII claim in a lawsuit, the claim must be "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* at 500 (internal quotations and cites omitted).

While this Court is sensitive to the fact that non-lawyers are frequently responsible for initiating the EEOC process and may not be privy to the requirements of potential subsequent

litigation, the charge and complaint must, at minimum, describe the same conduct and implicate the same individuals. *See, e.g., id.* at 501 (EEOC charge and complaint not alike or reasonably related, despite arising from sex discrimination, where charge involved payment of insurance premiums and complaint involved disparate job assignments); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (EEOC charge and complaint not alike or reasonably related where employee complained to the EEOC of only certain episodes of discrimination, and then sought judicial relief for different episodes of discrimination); *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013) (EEOC charge and Title VII complaint must describe same conduct and implicate same individuals). And, in this case, only one of Mercer's many allegations describes the same conduct and implicates the same individuals that were complained of in her IDHR and EEOC charges: the November 27, 2011 incident with Palmer. Even assuming, however, that all of Mercer's claims arise from facts "reasonably related" to the charged Palmer incident, summary judgment must still be granted in favor of Defendants because Mercer fails to make out a prima facie case of discrimination or retaliation.

### C. Race and Sex Discrimination

Title VII forbids an employer from refusing to hire or otherwise discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment" on the basis of sex or race. 42 U.S.C. § 2000e–2(a)(1). Plaintiffs have traditionally demonstrated the existence of that discriminatory motive through the "direct" and "indirect" methods of proof, though this Circuit has recently suggested moving away from the "ossified direct/indirect paradigm in favor of a simple analysis of whether a reasonable jury could infer prohibited discrimination" and an adverse employment action based on that discrimination. *Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013) (quotation marks omitted) (collecting cases).

7

While this approach is being considered, this Court continues to evaluate the factors in the traditional tests to determine whether a plaintiff has succeeded in creating a genuine issue of material fact. *See, e.g., Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 159 (2014).

Under the indirect method, Mercer may establish a prima facie case of discrimination with evidence that: (1) she was a member of a protected class; (2) she was meeting Defendants' legitimate performance expectations; (3) she suffered an adverse employment action; and (4) Defendants treated similarly situated employees outside of the protected class more favorably than they treated her. *Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 202 (7th Cir. 2013). Typical evidence under this method includes: "(1) 'suspicious timing, ambiguous statements oral or written, and other bits and pieces from which an inference' of discrimination could be drawn; (2) 'evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently'; or (3) 'evidence that the employer offered a pretextual reason for an adverse employment action.'" *Chaib*, 744 F.3d at 982 (internal citations omitted). Under the direct method, Mercer may rely on direct or circumstantial evidence of discrimination sufficient to permit a trier of fact to conclude that unlawful discrimination motivated the Defendants to take adverse employment action against her. *See Bass v. Joliet Pub. Sch. Dist.*, 746 F.3d 835, 841 (7th Cir. 2014).

Mercer has failed to respond to this motion or otherwise reference the direct or indirect methods of proof, and she has generally presented this Court nothing but a thin record on which to evaluate her discrimination claims. Regardless of the method of proof, the evidence in the record now before the Court is insufficient to permit a reasonable factfinder to conclude Mercer suffered any discrimination based on her sex or race. Mercer continues to be employed by the

Sheriff's Office. (Def. 56.1, ¶ 1). She has never been demoted or suffered a significant change in responsibilities, nor has she served her aggrieved of suspensions. *See, e.g., Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005) ("A suspension without pay that is never served does not constitute an adverse employment action."); *Chaudry v. Nucor Steel-Indiana*, 546 F.3d 832, 838 (7th Cir. 2008) (internal quote and citation omitted) (adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). Moreover, merely claiming, as Mercer does in her Amended Complaint, to have been "bombarded with discipline" or "subjected to a slew of complaints" is insufficient to establish an actionable adverse employment action. *See Oest v. Ill. Dep't of Corrections*, 240 F.3d 605, 613 (7th Cir. 2011) (unfavorable performance evaluations and oral and written reprimands do not constitute adverse employment action). Mercer has never been disciplined for anything involving her handling of her key or radio between 2011 and the present, (Def. 56.1, Ex. E. at 146).

Similarly unpersuasive are Mercer's allegations that certain actions were taken against her because of her race or sex since each of the actions she complains of were either directed at all employees or were motivated by something other than race or sex. For example, all employees, not just Mercer, were directed to complete the Gang Form, handle radios and equipment in a particular manner, and allow inmates to congregate in a cooling area during extreme heat in July 2011. (Def. 56.1, ¶¶ 40, 48, 49, 51, 55, 58, 148-49, 182-83). Mercer conceded during her deposition that Iacovetti might have bumped into her because "he was having a bad day" and that she was merely speculating as to why Palmer came to speak with her on November 27, 2011. (Def. 56.1, ¶¶ 29, 43, 71-78; *Id.*, Ex. E. at 98, 122, 155). She similarly never claimed at her deposition that Paleologos issued her a suspension because of her race or

9

sex, instead saying he disciplined her for "not doing [her] job." (*Id*. at 22-24). She further conceded at her deposition that she thought Paleologos treated her differently from all other supervisors and officers, not just those with a different race or sex from her. (*Id*. at 201-202). Mercer merely concluding in her amended complaint that similarly-situated non-African American or non-female employees were treated differently than her is insufficient to give rise to a disputed issue of material fact, especially where her own deposition testimony contradicts such conclusion. *See Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 459-60 (7th Cir. 2014) (party opposing summary judgment may not "rest upon the mere allegations or denials of his pleading…") (internal quotation marks omitted).

Even Plaintiff's general allegation of "hostile work environment" cannot survive scrutiny. Spread out over several years, an allegedly slammed door, paper snatching, unwelcome verbal exchanges, and other brief incidents with colleagues such as in this case do not create an objectively hostile work environment. *See, e.g., Yuknis v. First Student*, 481 F.3d, 1144-45 (7th Cir. 2007) (finding no hostile work environment where co-workers gambled, watched pornography, used foul language; and where manager referred to a female co-worker as a "fat ass"); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995) (stating that several offensive sexual gestures and comments spread out over several months were not sufficient to demonstrate hostile work environment, noting "[t]he infrequency of the offensive comments is relevant to an assessment of their impact."); *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993) (finding that no hostile work environment existed when co-worker put his arm around the plaintiff, placed "I love you" signs in her work area, placed his hand on her shoulder numerous times, attempted to kiss her once in a bar, and may have attempted to kiss her twice at the office). Mercer may not enjoy an idyllic work environment or relationships with

her colleagues and supervisors, but there is nothing on this record that would allow a reasonable jury to think she has suffered discrimination because of her race or sex.

### D. Retaliation

Mercer's retaliation claim arises from the same events as her discrimination claims, again without indication as to whether she intended to proceed under the direct or indirect method of proof. *See Sklyarsky v. Means-Knaus Partners Co.*, 777 F.3d 892, 898 (7th Cir. 2015). Typically, these claims undergo distinct analyses, but here they fail for the same reasons: Mercer has failed to show that she experienced an adverse employment action or that any action against her was improperly motivated. *See Gaines v. K-Five Const. Corp.*, 742 F.3d 256, 261 (7th Cir. 2014); *Dear v. Shinseki*, 578 F.3d 605, 609 (7th Cir. 2009). Consequently, Mercer's retaliation claim fails for the same reasons discussed in the harassment section above. Moreover, Mercer's conclusory allegation that the 2011 incident with Palmer was retaliatory in nature fails because she conceded at her deposition that she had no idea what motivated the incident and she provided nothing to corroborate her theory that the incident "occurred within a time period following [a] protected activity," (Dkt. No. 7, ¶ 148). *See Sklyarsky*, 777 F.3d at 898 (suspicious timing alone "rarely establishes causation" absent corroborating evidence).

### E. Indemnification Claim

There is nothing in the record before this Court to indicate that the County is a proper party to this lawsuit for any reason other than as indemnitor to the Sheriff. *See, e.g., Mitter v. Cnty. of DuPage*, WL 5951810, at *6 (N.D.Ill. 2013) (county proper party to Title VII claims against Sheriff's Office only as indemnitor). And, as there is no liability as to the Sheriff, there is no liability as to the County. *See, e.g., Mercer*, 2014 WL 2862272, at *8.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [31] is granted in its entirety and final judgment is entered in favor of Defendants.

```
                                     _____
                                     Virginia M. Kendall
                                     United States District Court Judge
                                     Northern District of Illinois
```

Date:   6/12/2015